WIPFLER *v.* DETROIT PATTERN WORKS.

1. GIFTS — BANK DEPOSIT — HUSBAND AND WIFE — FRAUDULENT TRANSFER.

Where a husband deposits his money in a bank to the credit of his wife, and the bank book is placed in her keeping, and all checks by which the deposit is withdrawn are signed by her, there is a gift to her, which he cannot avoid, though its purpose was to place the money beyond the reach of his creditors.[1]

2. FRAUDULENT CONVEYANCES — EQUITY — PARTIES IN PARI DELICTO.

Equity will not assist a husband to obtain rights in a corporation organized by his wife with funds originally his and dependent chiefly on his labor and skill for its success, where title to the property has been kept in his wife's name to prevent its being reached by his creditors.

Cross-appeals from Wayne; Rohnert, J. Submitted February 8, 1905. (Docket No. 110.) Decided July 21, 1905.

Bill by Charles Wipfler against the Detroit Pattern Works, Lucy Wipfler, Charles E. Wipfler, and Louis Horn to establish his rights in defendant corporation. From the decree rendered, all parties appeal. Reversed, and bill dismissed.

*Charles R. Robertson (Jasper C. Gates,* of counsel), for complainant.

*Fred H. Warren,* for defendants.

CARPENTER, J. Defendant Lucy is the wife of complainant, and defendant Charles E. is their eldest son. In September, 1898, complainant commenced the manufac-

---

[1] As to delivery of bank book to sustain gift of money in bank, see note to *Jones* v. *Weakley* (Ala.), 19 L. R. A. 700.

ture of patterns. This business was carried on under the name of the Detroit Pattern Works. The capital invested in that business was $1,050 in cash, the ownership of which is in dispute, and other property of inconsiderable value. In January, 1899, it was found that additional capital was needed, and defendant Lucy advanced $1,500, which she obtained by mortgaging land which had formerly been conveyed to her by complainant. This mortgage was subsequently paid, in part by defendant Lucy from moneys earned by her in keeping boarders, and in part—and this constituted the larger part—from the profits of said business. At the time this $1,500 was put in the business, defendant Charles E. assumed its financial management. Since that time he has not only managed its finances, but has exercised the power of employing and discharging men. In October, 1900, defendant Lucy, assuming to be the owner thereof, transferred all the assets of said business to a corporation then organized, also called the Detroit Pattern Works. The incorporators in said corporation were the three individual defendants in this case. Defendant Horn, one of the employés in said business, subscribed for only one share of stock, which he subsequently transferred to defendant Lucy. The stock subscribed by defendant Charles E., with the exception of one share, was also subsequently transferred to defendant Lucy. From its inception the business has been a financial success. This success has been due, not only to the efforts of complainant, but also to the efforts of defendant Charles E. Said Charles E. had devoted his time and energy to the business upon the assumption that it belonged to his mother, defendant Lucy, expecting that through her kindness it would ultimately come to him. Complainant contends that he contributed the original capital to said business, that the corporation was formed without his knowledge and consent, and that the property and business of said corporation therefore belongs to him; and he filed a bill in the court below to enforce his rights

as such owner.   From a decree granting him partial relief, both parties appeal to this court.-

To sustain complainant's claim that from the beginning he has owned the property and business of the Detroit Pattern Works, it is necessary that we should find that he owned the same at its inception, and that he did not consent to its transfer to the corporation, in which he had no interest.   In my judgment this record warrants our saying that from the beginning the property and business belonged to defendant Lucy, and that complainant consented to its transfer to the corporation.   I will proceed to state briefly my reasons for each of these conclusions.

Respecting the ownership of the business at its inception:   Ordinarily we may determine the ownership of a business by looking at some distinct arrangement between the parties interested.   In this case, no such distinct arrangement appears to have been made.   We must infer that ownership from the ownership of the capital contributed, and this is the test complainant asks us to apply. The governing question is this:   Who owned the $1,050 which constituted substantially all the original capital? This $1,050, which unquestionably had once belonged to complainant, was at the time this business was started deposited by him in the City Savings Bank to the credit of defendant Lucy.   The book which evidenced this deposit was placed in her keeping.   She signed all the checks by which the deposit was withdrawn.   Complainant testified that this deposit was made in his wife's name in order to secure her for the $1,500 loan heretofore referred to. I am forced to discredit this testimony.   I am satisfied that the $1,500 loan was not made or contemplated at the time complainant made this deposit in his wife's name.

Complainant insists that, notwithstanding his making this deposit in his wife's name, the money still remained his under the authority of *Peninsular Sav. Bank* v. *Wineman*, 123 Mich. 257.   That decision holds "that a mere deposit in the name of another, unaccompanied by acts or declarations indicating an intention to donate the

fund, is not alone sufficient to prove a gift," and is inapplicable to this case, where there was also a delivery of the bank book and a full recognition of the wife's ownership of the fund deposited. This case is governed by *Blasdel* v. *Locke*, 52 N. H. 243, cited with approval and distinguished in *Peninsular Sav. Bank* v. *Wineman*, and compels us to hold that there was a gift. See, also, *Camp's Appeal*, 36 Conn. 88; *Guinan's Appeal*, 70 Conn. 342; *Hill* v. *Stevenson*, 63 Me. 364. The only ground upon which we could hold that complainant continued to have an interest in the deposited fund is that suggested by his wife's testimony, viz., that he had transferred it to her for the purpose of placing it beyond the reach of creditors. This is corroborated by other testimony in this case, and it is established to my satisfaction that complainant wished his wife to appear as the owner of the property and business of the Detroit Pattern Works, so that no property of his might be taken by creditors.

I think it may also be said that, actuated by this same motive, viz., the motive of placing his property beyond the reach of creditors, complainant later not only consented, but advised that the property should be transferred to a corporation in which it should clearly appear that he had no interest. It is true that he testifies that he knew nothing of this transfer. I discredit this testimony, not only because it is contradicted by the testimony of his wife and son, but because it seems to me highly improbable that this circumstance happened without his knowledge.

For these reasons I think, as I have heretofore stated, that complainant never owned the property and business in controversy, and that he consented to its transfer to a corporation in which he had no interest. I have no doubt that there was an understanding, as there always is when a husband transfers to his wife property to defraud creditors, that he should continue to have an interest in said property and participate in the profits of the business. If we could enforce this understanding, complainant would be entitled to relief; otherwise, he would not. No princi-

ple of law is better settled than that we cannot compel a confederate in such an illegal scheme to carry out his contract. Courts refuse to interfere, not because they approve the reprehensible conduct of the confederate, but because they will not aid the other party in an illegal undertaking.

It results from this reasoning that, in my judgment, the decree of the court below should be reversed, and a decree entered here dismissing complainant's bill, with costs of both courts.

MOORE, C. J., and McALVAY, GRANT, and BLAIR, JJ., concurred.